FRANK TIMMONS V. THE STATE.

No. 21959. Delivered March 4, 1942.

The opinion states the case.

*Sam T. Holt,* of Carthage, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant, a negro, was convicted of an assault with intent to murder without malice upon John Helms, a white man, and assessed a penalty of one and one-half years in the penitentiary.

There are but two bills of exceptions in the record. Bill No. 1 relates to the failure of the trial court to give a special instruction to the jury, requested by appellant's attorney, which was in substance that the jury should not take into consideration the fact that appellant was a negro and the complaining witness a white man. While such matter might have become material in a question to the proffered jury panel upon their voir dire, we do not think the trial court should have been required to thus charge the jury in the absence of any reason shown other than the difference in color of the appellant and the complaining party.

Bill of exceptions No. 2 merely complains of the court's charge wherein an assault to murder was set forth, appellant contending that the facts did not authorize such a charge.

The facts show that Mr. Helms was an employer of appellant, who drove a truck in some wooded area; that appellant claimed more time for the previous day's work than Mr. Helms was willing to allow him; that appellant then announced that he would quit work, whereupon Helms ordered appellant to get out of the woods, out of the way. Appellant then suggested that Mr. Helms put him out. We quote from Helms' testimony:

"When I told him to just go on away and leave he didn't make any reply much; I was looking down where I had the truck and wasn't paying much attention to that. I never had no

trouble with no man. The first thing I knowed he had a knife around my neck with his right hand. I caught the knife with this hand right here—right here (indicating), and fell to my feet—I fell to the ground in order to get my head out from between his arms and I had my hand between the knife and my neck right here (indicating). I caught it that way. I was still when I stopped his arm, when I caught it. I caught it just as soon as it got there. I didn't see the knife then. I didn't see it later on. When I threw my hand up there I got it cut right across there; something cut it. That hand and whatever cut me when I felt the lick in my hand was right up here, just this close to my throat (indicating); right up close. I got a scratch on my neck. I didn't get any cut in my hand only right there (indicating). I have a small scar on my hand right there; right across there. I didn't get that scar when I fell down. I got that right then. I never did go no further than my knees, just to clear myself. That boy and I hadn't had any trouble before that."

Joe Deadman, a State's witness, was the only witness save the participants to this trouble, and we quote from his testimony:

" 'That's all you got, five hours, and that's all you are going to get.' * * *

"Then Mr. John steps off from him as if he was going to see about some of the trucks; he stepped off from him about three or four steps, maybe, and Frank says to him 'I know I made more than five hours and I don't want nothing but that I made; all that I made I sure want'. Mr. Helms says to him, says 'Nigger, you sass me,' says 'I will put you out of these woods,' and Frank said 'God Damn it, put me out'. When he said that that white man attempted to run his hand in his pocket as if he was going to get a knife and he whirled to Frank and they run together. When they clinched Frank beat him out with his knife, when he seen Mr. John was going after his. At that time Frank didn't try to cut Mr. Helms; when he come out with the knife he clinched Mr. Helms with the knife in his hand and threw him down against the ground. He didn't attempt to cut him at that time with the knife; he had the knife in his hand. There wasn't a thing in the world to prevent him from cutting him with it. He shoved him off of him; threw him down against the ground. Frank threw him down and got down as if he was going to hold him down there and he started down on him and just got up and let Mr. John get

up. He didn't try to cut him while he was down there; he just got up and let Mr. John get up. After he got up Mr. John then seems to reach for a club or something substantial to hit him with and he didn't see anything and, of course, he whirled back to Frank again with his naked hand and when he run into Frank the second time that is when Frank grabbed him and made a swing at him with his pocket knife. When I told him not to do that he didn't attempt to do anything any further. There wasn't anything that could have prevented Frank from cutting him there with the knife if he had wanted to. At the time he put the knife up around his neck Mr. Helms didn't do anything to prevent him from cutting his neck at that time, only when he threw the knife up Mr. Helms caught his hand; he already had his knife up against his neck when he done that. That boy shoved him down the second time; he shoved him off the second time. He did not try to cut him at any time during that time. I didn't see any blood on Mr. Helms anywhere except that place on his hand there. After Mr. Helms went away from that boy that boy at no time followed him up and attempted to cut him with the knife. When Mr. Helms turned away from him there the boy did not follow him up with the knife and attempt to cut him in any way. That boy never advanced on Mr. Helms and attempted to cut him with the knife only at the time he made the swing. After I told him not to do that he didn't make any further attempt to do anything. I didn't see anything done there by anyone to prevent this boy from cutting Mr. Helms with the knife if he had wanted to except what I have just described. I am no relation to that boy."

It was shown that Mr. Helms had a slight cut on his finger and a scratch on his neck; that the wounds were superficial, with but slight depth, and had no bandages thereon, and no consultation of a doctor about the wounds. The knife was a pocket knife with a blade about three inches long.

We are impressed with the fact that the testimony does not show beyond a reasonable doubt an assault with the intent to commit murder. The State's own witness shows that although appellant had the opportunity to take the life of Mr. Helms, he stopped short thereof and failed to inflict upon him, though he had him down twice, any but superficial wounds.

We think the trial court erred in charging on an assault with intent to murder, as set forth in bill No. 2, and the judgment is therefore reversed and the cause remanded.